**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                   No. CR 07-388 JB

SYGENSTZ MOREAU,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Appeal of Magistrate's Detention Order, filed February 23, 2007 (Doc. 13)("Motion").  The Court held a hearing on the motion on March 2, 2007. The primary issue is whether the United States has shown, by a preponderance of the evidence, that Defendant Sygenstz Moreau is a danger to the community or to any individual, and/or a flight risk. Because the Court concludes that there are alternatives to detention, and that it can fashion conditions that will manage the risks of danger and nonappearance that Moreau presents, the Court will grant the motion and release Moreau, subject to certain conditions.

**FACTUAL BACKGROUND**

Moreau, a resident alien, came to the United States when he was twelve-years old.  See Pretrial Services Report ("PSR") ¶ 1, at 1 (dated February 14, 2007).  He was born in Haiti, and resided there until he and his family relocated to the United States; the record does not reveal any other ties to Haiti.  See id.  Moreau has resided in the United States without any prior encounters with law enforcement.  See id., ¶ 4, at 2.

1.      **Moreau's History/Residence/Family Ties.**

Moreau was born on September 15, 1977; he is twenty-nine years old. See id. at 1. He was born in Port-Au-Prince, Haiti. See id. ¶ 1, at 1. Haiti is one of the poorest countries in the western hemisphere.

Moreau represents that he resided in Port-Au-Prince before relocating to Brooklyn, New York in 1989. See id. United States Immigration records indicate that Moreau was granted resident alien status on August 14, 1989, when his family relocated. See id.

Moreau lists his parents as Mary Bettie Luis and Paul Moreau. See id. His mother passed away in 1999. See id. Moreau also notes two half-brothers, ages thirteen and eleven. See id. Moreau has described daily contact with his family. See id.

Paul Moreau has verified Moreau's biographical and familial information. See id. Moreau reported a current relationship, since 2004, with Vivian Lopez. See id.

Moreau has lived in the New York City area for eighteen years. See id. at 1. Moreau reports that he has lived with his father, his step-mother, and two step-brothers, in his father's house located at 1600 Remsen Avenue, Brooklyn, New York, for the past nine years -- i.e. since March 1998. See id. Moreau advises that his father's home remains his address and residence. See id. ¶ 1, at 1. The United States Probation Office ("USPO") conducted an inquiry of ChoicePoint's Discovery database that corroborates this address. See id. Paul Moreau has also verified Moreau's current residence and residence history. See id.

2.      **Employment History/Financial Resources.**

Moreau reported that he graduated from George Westinghouse High School in Brooklyn in 1996. See id. ¶ 2, at 1. He subsequently completed two years of course work at the New York

Technical College in Brooklyn in 1998.  See id.  He then attended truck driving school.  See id.
Moreau advises that he has worked as a commercial truck driver since earning a commercial driver's
license in 2003.  See id.  He has a social security number.  See id. at 1.

Moreau advises that, before his current employment, he worked from 2006 to January 2007
as a truck driver for Concept Xpress in Long Island, New York.  See id. ¶ 2, at 1.  He reported that
he had been employed as a truck driver at his current employer, Allaconda Transport Company, since
February 2007.  See id.  Allaconda Transport is located at 812 Cardinal Way, Kissimmee, Florida.
See id.

Paul Moreau verified Moreau's educational background and employment history.  See id.

Moreau advises that he has no household expenses and provided an estimate of his financial
assets and liabilities:

| Income/Asset | Value |
|---|---|
| cash | $1,400.00 |
| checking account | $1,000.00 |
| **Expenditure/Liability** | **Monthly Payment** |
| cellular telephone | $150.00 |

Paul Moreau verified Moreau's financial situation.  See id. ¶ 2, at 1-2.

**3.     Health.**

Moreau reports that he is in good physical and mental health, and reports no use of alcohol
or illegal drugs.  See id. ¶ 3, at 2.  Paul Moreau corroborated Moreau's state of health and lack of
substance use.  See id.

**4.     Prior Record.**

-3-

Research of local records and the National Crime Information Center ("NCIC") database reveals that Moreau has no arrest or criminal history under his name or any other identifiers. See id. ¶ 4, at 2.

**5.     The Alleged Offense.**

On February 11, 2007, Moreau entered the Gallup New Mexico Port of Entry, driving a semi truck and pulling a trailer. See Criminal Complaint at 1, filed February 12, 2007 (Doc. 1). Upon inspection, it was discovered that the trailer contained approximately 2,700 pounds of marijuana. See id. at 2. The truck was registered to Kurt Denny d/b/a Allaconda Transport, and the registration was assigned to Moreau's co-driver, Gregory Pierre. See id. at 3.

In 1999, Pierre was stopped while driving a semi truck pulling a trailer in Missouri. See id. Authorities found approximately 1,700 pounds of marijuana in the trailer. See id. At that time, a man name Emilo Jean accompanied Pierre. See id. Neither Pierre nor Jean were ever prosecuted as a result of the seizure. See Hearing Transcript at 13:6-8 (Small)(taken February 14, 2007)("February 14 Transcript").[1]

Moreau's logbooks were seized on February 11, 2007. See Criminal Complaint at 2. Inspection of the logbooks revealed that Moreau had driven with Emilo Jean on February 1-3, 2007. See id. at 3. To the DEA's knowledge, before February 11, 2007, Moreau had never been stopped or involved with drug transportation. See February 14 Transcript at 36:21-37:20 (Small). He was not registered in the DEA's National Narcotics Intelligence System ("NADDIS"). See id.

**PROCEDURAL BACKGROUND**

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Moreau is charged with conspiring to possess with the intent to distribute more than 1000 kilograms of marijuana, a Schedule I controlled substance, and with possessing with the intent to distribute more than 1000 kilograms of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  See Indictment, filed February 28, 2007 (Doc. 15). Moreau's plan is to return to his father's address and live with his father.  See Motion at 3.  Paul Moreau has expressed support for Moreau and indicated a willingness to assist with any imposed conditions of release.  See Hearing Transcript 17:16-19:2 (P. Moreau)(taken March 2, 2007)("March 2 Transcript").

Moreau represents that he would find work as a local driver and abide by all conditions of release.  See id. at 6:17-21 (Serna).  The Pretrial Services report recommends that Moreau be released on his own recognizance subject to a series of reporting requirements.  Specifically, the USPO  recommends that Moreau be released on his own recognizance, subject to the following conditions:  (i) that Moreau regularly report to the USPO as directed; (ii) that Moreau is restricted from contact with Pierre, the co-Defendant of the alleged offense; (iii) that Moreau is prohibited from possessing a firearm, destructive device, or other dangerous weapon; (iv) that Moreau refrain from the use of alcohol and comply with random alcohol screening; (v) that Moreau refrain from any use or unlawful possession of a narcotic drug or other controlled substance; (vi) that Moreau comply with random drug screening and involve himself in substance abuse counseling; and (vii) that Moreau be restricted to travel within the State of New York and direct travel to New Mexico.  See PSR ¶ 6, at 3.

Moreau appeared for a detention and preliminary hearing on February 14, 2007.  See February 14 Transcript.  At the detention hearing, the United States objected to the USPO's

recommendation that Moreau be released, and the Honorable Robert Hayes Scott, United States Magistrate Judge for the District of New Mexico, detained Moreau.  See Order of Detention Pending Trial, filed February 14, 2007 (Doc. 12).  Judge Scott did not make findings of fact, however, that Moreau was a risk of nonappearance or a danger to the community.  See id.  Judge Scott made one finding of fact: "I find credible testimony and information submitted at the hearing establishes by (clear and convincing evidence) (a preponderance of the evidence) that based on defendant's ties to Haiti and criminal behavior, he will be detained."  Id.

On February 23, 2007, Moreau filed this motion, appealing the Order of Detention that Judge Scott issued.  Moreau did not seek to acquire the United States' position before filing his appeal.

## LAW REGARDING RELEASE PENDING TRIAL

A court must order the pretrial detention of a defendant if, after a detention hearing, the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  See Reno v. Koray, 515 U.S. 50, 57 (1995)(quoting 18 U.S.C. § 3142(e) and noting that, if the court finds no conditions that will assure the defendant's appearance and the public's safety, "the court 'shall order the detention of the person'")(emphasis added).  In a case involving a violation of the Controlled Substances Act, for which a maximum term of imprisonment of ten years or more is prescribed, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed [the] offense."  18 U.S.C. § 3142(e).  See United States v. Trammel, 922 F. Supp. 527, 529 (N.D. Okla. 1995).  The United States Court of Appeals for the Tenth Circuit has explained how this presumption operates

-6-

in a federal drug case:

> Under section 3142(e), upon a finding of probable cause that the defendant has committed a federal drug offense carrying a maximum prison term of ten years or more, a rebuttable presumption arises that no conditions of release will assure defendant's appearance and the safety of the community. Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991).  In determining whether probable cause exists to make the presumption applicable, the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).

## ANALYSIS

The Court finds that Moreau has made a showing adequate to defeat the presumption of detention pending trial for alleged violations of the Controlled Substances Act.  The Court believes that it can fashion conditions to protect the public and to ensure Moreau's continued appearance in court.  The United States has not met its burden; it has not shown, by a preponderance of the evidence, that Moreau is a danger to the community or a flight risk.

## I.     MOREAU MAKES A SHOWING ADEQUATE TO DEFEAT THE PRESUMPTION IN FAVOR OF DETENTION PENDING TRIAL.

With respect to the presumption in favor of detention pending trial of alleged violators of the Controlled Substances Act facing sentences of ten years of more, "[t]he defendant's burden of production is not heavy, but some evidence must be produced."  United States v. Stricklin, 932 F.2d

at 1354-55.  Moreau has submitted evidence that he has no arrest or conviction history, and that he

is not entered in the NADDIS system.  Moreau has also presented evidence that he has lived in the

Brooklyn community with his father and siblings for nine years, and that, while living in Brooklyn,

he graduated from high school, attended community college, received his commercial trucker's

license, and has a history of stable employment.  Moreover, Moreau submitted evidence that he no

longer has ties to Haiti.  The Court believes that these showings on the part of Moreau are sufficient

to overcome the presumption in favor of detention pending trial that is operative here.

## II.     THE UNITED STATES HAS NOT SHOWN THAT MOREAU IS A DANGER TO THE COMMUNITY OR TO ANY PERSON.

The Court must  first assess Moreau's dangerousness.  Moreau's "criminal behavior" is one

element forming the basis of Judge Scott's detention order.  The evidence that Moreau is a danger

to the community or to any person is limited to the nature of the alleged offense.  Considering all the

circumstances and the evidence regarding Moreau's personal nature and criminal history, the Court

does not believe that aspect is sufficient to detain Moreau as a danger to others pending trial.

Moreau has no criminal history.  He has not been arrested or convicted, and he does not

appear in the NADDIS database.  Moreau is a high school graduate who attended technical college

and commercial driver's school.  The allegations against Moreau involve no firearms or weapons.

He is accused of possessing marijuana.  While possession of marijuana is illegal, marijuana is

commonly understood to be the least serious of the controlled substances that form the basis of Title

21 violations.

Without minimizing the seriousness of the crime Moreau is alleged to have committed, the

Court does not believe that the facts and circumstances of it show him to be a danger to the

community or to any person.  The Court can fashion conditions that protect the public.  The Court will not detain Moreau based on his dangerousness.

III.   **THE UNITED STATES HAS NOT SHOWN THAT MOREAU IS A FLIGHT RISK.**

The Court must next assess Moreau's risk of nonappearance.  There are two factors suggesting that Moreau may be a flight risk: (i) his ties to Haiti; and (ii) the transient nature of the alleged offense.  Neither justify pretrial detention under the facts and circumstances of this case.

Moreau's ties to Haiti ended when he moved to the United States at a young age.  Haiti is a place of political turmoil and economic destitution.  There is no evidence that Moreau, who has been raised, educated, and employed in the United States, has any desire to return to Haiti.  Moreau's weak ties to Haiti do not provide a strong basis for detention.

The Pretrial Services report supports a finding that Moreau has a long history of stable residence.  While the alleged offense is of a transient nature, Moreau has not been transient.  He appears to have strong ties to his community in New York; it is only the nature of the alleged offense that supports a finding of transience.  The Court does not believe that the nature of the alleged offense, given his history, is sufficient to detain Moreau.  The Court can fashion conditions that protect against nonappearance.  The Court will not detain Moreau based on his risk of flight.

IV.   **THE COURT CAN FASHION ADEQUATE CONDITIONS TO MANAGE THE RISKS.**

Upon careful review of the evidence presented, the Court is convinced that it may fashion conditions that can adequately manage the risk of nonappearance and the danger to others that Moreau poses.  The Court will adopt the UPSO's recommendations.  The Court will also require Moreau to post a $20,000.00 secured bond -- if a bond in that amount cannot be posted, Moreau will

Case 1:07-cr-00388-JB   Document 47   Filed 05/07/07   Page 10 of 10


be required to stay at the La Posada Halfway House in Albuquerque, New Mexico; if a bond in that amount can be posted, Paul Moreau will be required to act as Moreau's third-party custodian. Further, if possible, the Court will require Moreau to comply with an electronic-monitoring regime. The Court believes that these conditions will reasonably protect the public and assure Moreau's appearance at court proceedings.

**IT IS ORDERED** that the Magistrate Judge's Detention Order is overturned and that Moreau be released on the conditions set forth in the Pretrial Report, the posting of a $20,000.00 secured bond, Paul Moreau assuming the responsibility of a third-party custodian, and, if available, compliance with a electronic-monitoring regime.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Larry Gomez
   Acting United States Attorney
Damon P. Martinez
   Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Richard A. Winterbottom
   Federal Public Defender
Albuquerque, New Mexico

      *Attorney for Defendant Sygenstz Moreau*

-10-